**NOT FOR PUBLICATION**

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ELIZABETH A. MAHONEY, <br><br> Plaintiff, <br><br> v. <br><br> THE LATE RICHARD MCDONNELL, ESQ., THE ESTATE OF RICHARD MCDONNELL, ESQ., BRUCE WHITAKER, ESQ., CHERYL PICCOLI, MCDONNELL & WHITAKER, L.L.P., MCDONNELL & WHITAKER, L.L.C., <br><br> Defendants. | Civil Action No. 2:12-6875 <br><br> (SDW) (MCA) <br><br> **OPINION** <br><br> **September 16, 2014** |

**WIGENTON**, District Judge.

Before this Court is Defendants Richard McDonnell, Esq., Bruce Whitaker, Esq., Cheryl Piccoli, and McDonnell & Whitaker, LLP's (collectively, "Defendants") Motion for Summary Judgment. (Dkt. No. 54.) Also before this Court are Plaintiff Elizabeth Mahoney's ("Plaintiff") Motion for Partial Summary Judgment and Motion to Strike. (Dkt. Nos. 55, 64.) This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332. Venue is proper under 28 U.S.C. § 1391(b). This Court, having considered the parties' submissions, decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons stated below, the Defendants' Summary Judgment Motion is **GRANTED** and Plaintiff's Partial Summary Judgment Motion and Motion to Strike are **DENIED**.

1

I.   **FACTUAL AND PROCEDURAL BACKGROUND**

   A.   **FACTS**

In June 2006, Plaintiff Elizabeth Mahoney retained the late Richard McDonnell[1] ("McDonnell") of the law firm McDonnell & Whitaker, LLP ("McDonnell & Whitaker") to pursue appeals of a February 21, 2006 order and a March 16, 2006 order (collectively, the "Appealed Trial Court Orders") stemming from Plaintiff's 1998 divorce and subsequent custody proceeding. (Dkt. No. 54, Def.'s Statement of Undisputed Facts ("SUF") ¶¶ 1, 7-13.)  Plaintiff executed a retainer agreement hiring McDonnell & Whitaker on or about July 5, 2006. (Am. Comp. ¶¶ 5-6.)

On July 10, 2006, McDonnell filed a Notice of Appeal with the New Jersey Appellate Division. (Dkt. No. 56, Pl.'s Statement of Undisputed Facts ("SUF") ¶ 142.)  Throughout the summer of 2006, McDonnell and Plaintiff's ex-husband's attorney engaged in settlement discussions. (*See* Ex. 35 to Pl.'s SUF.)  They had telephone conferences, exchanged several letters, and drafted a proposed consent order, but these settlement attempts ultimately proved unsuccessful. (*Id.*)  Additionally, the parties participated in an Appellate Division administered Pre-Argument Conference in September 2006. (*See* Ex. 76 to Pl.'s SUF.)  Thereafter in October, the Appellate Division issued an initial Scheduling Order requiring McDonnell to file Plaintiff's brief and appendix for her appeal by November 30, 2006. (Def.'s SUF ¶ 14.)

On or about October 31, McDonnell, on Plaintiff's behalf, filed an Application for Emergent Relief from the Appealed Trial Court Orders in the Appellate Division. (*See* Ex. 66 of Pl.'s SUF.)  The application was summarily denied on the same day, and a handwritten note on the form states as follows: "Application for emergent relief is denied: but you may file a motion in the ordinary course with the clerk." (*See* Ex. 13 to Pl.'s SUF.)  Immediately thereafter on or

---

[1] McDonnell passed away in January of 2011.

about November 2, McDonnell moved for a stay of the Appealed Trial Court Orders. (Dkt. No. 62, Ex. J to Def.'s Responsive Statement of Undisputed Facts ("RSUF").) The motion for stay was eventually denied on December 1, 2006. (*See* Ex. 46 to Pl.'s SUF.)

On November 30, 2006, McDonnell requested an extension to file Plaintiff's brief and appendixes until December 29, 2006. Nothing in the record, however, indicates that the request was granted. (Pl.'s SUF ¶¶ 160-61.) Thereafter, on December 19, McDonnell sent Plaintiff correspondence enclosing a "Withdrawal/Substitution of Attorney" form to be executed by Plaintiff for filing with the Appellate Division. (Def.'s SUF ¶ 17.) On the same day, McDonnell advised the Appellate Division that he was withdrawing as Plaintiff's counsel and that the substitution of counsel was forthcoming; the correspondence also included another request that the dates for the filing of the appellate brief and appendix be extended as Plaintiff would be appearing in the matter *pro se*. (*See* Ex. to Def.'s SUF ¶ 16.) Plaintiff signed the form and returned it to McDonnell, which was subsequently filed with the Appellate Division on January 3, 2007. (Def.'s SUF ¶¶ 16-19.) The Appellate Division did not object to the sufficiency of the filed substitution of attorney. (Def.'s SUF ¶ 20.) It should be noted that McDonnell and Plaintiff's relationship appears to have been deteriorating by the fall of 2006 due to questions about the scope of McDonnell's representation. (*See* Ex. 39 to Pl's SUF.) As such, McDonnell wrote a letter to Plaintiff clarifying the scope of his representation and advising her that he could no longer be distracted by all the ancillary issues she raised. (*Id*.)

After the filing of the Substitution of Attorney, Plaintiff proceeded *pro se*. (Def.'s SUF ¶ 21.) Importantly, Plaintiff is a member of the New Jersey bar, having graduated from Western New England Law School in 1987 and having passed the bar examination in 1989. (Pl.'s SUF ¶¶ 24-26.) It should be noted, however, that Plaintiff's license is in inactive status and prior to the

herein matter, she had never practiced law since graduating from law school. (Pl.'s RSUF ¶¶ 26, 27.) Plaintiff retrieved her file from McDonnell & Whitaker's office on January 22, 2007, although she disputes whether what she obtained was the entire copy of her file. (Def.'s SUF ¶ 22; Pl.'s Responsive Statement of Undisputed Facts ("RSUF") ¶ 22.) Plaintiff thereafter notified the Appellate Division that she would be representing herself *pro se* and was granted an extension until March 30, 2007 to file her brief and appendix. (Def.'s SUF ¶¶ 23-24.) Despite the extension, Plaintiff failed to perfect her appeal or retain new counsel. (Def.'s SUF ¶ 25.) Consequently, the Appellate Division dismissed her appeal without prejudice on April 25, 2007. (Def.'s SUF ¶ 26; Pl.'s SUF ¶ 382.)

Finally, Plaintiff filed a bankruptcy petition in 2009. (Def.'s SUF ¶ 28.) Although she admits that she was generally aware of McDonnell's alleged negligence and fraudulence in January 2007, Plaintiff did not disclose her possible malpractice claim in the bankruptcy petition. (*Id.*) She maintains that she did not realize that she had a cognizable malpractice claim against Defendants until six years later when she had an opportunity to research the issue. (*Id.*)

### B. PROCEDURAL HISTORY

Plaintiff initially filed her Complaint on November 5, 2012. (Dkt. No. 1.) She filed a 149-page Verified Amended Complaint[2] on October 17, 2013, asserting fourteen causes of action against McDonnell and his estate, McDonnell's law partner Bruce Whitaker ("Whitaker"), McDonnell & Whitaker employee Cheryl Piccoli ("Piccoli"), and McDonnell & Whitaker. (Dkt. No. 29.) Plaintiff pleads claims for legal malpractice, breach of the retainer agreement, breach of fiduciary duty, fraudulent concealment, and fraudulent inducement into signing the Substitution

---

[2] Plaintiff has withdrawn Counts XI and XII. (Dkt. No. 71, Pl.'s Opp. Br. 2.) It should be noted that in the Amended Complaint, after Count IX but before Count X, Plaintiff begins the numbering of her allegations at No. 1 instead of continuing the numbering of her allegations.

4

of Attorney. (Dkt. No. 29.) Specifically, Plaintiff alleges that McDonnell was negligent in filing the Application for Emergent Relief and in his failure to have filed the appellate brief and appendix. (*See* Am. Compl.) She also maintains that McDonnell unlawfully substituted out of the case as her attorney and failed to disclose material facts of her case. (*See* Am. Compl.) Additionally, Plaintiff asserts claims against Whitaker sounding in vicarious liability for the tortious or fraudulent acts of McDonnell and Piccoli, and against Piccoli for negligence. (*See* Am. Compl.)

## II. LEGAL STANDARD

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine if a reasonable jury could return a verdict for the nonmovant, and it is material if, under the substantive law, it would affect the outcome of the suit. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party must show that if the evidentiary material of record was reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden of proof. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

Once the moving party meets the initial burden, the burden then shifts to the nonmovant who must set forth specific facts showing a genuine issue of material fact for trial, and may not rest upon the mere allegations or denials of its pleadings. *See Shields v. Zuccarini*, 254 F.3d 476, 481 (3d Cir. 2001). The court may not weigh the evidence and determine the truth of the matter, but rather should determine whether there is a genuine issue as to a material fact. *See Anderson*, 477 U.S. at 249. In doing so, the court must construe the facts and inferences in "a light most favorable" to the nonmoving party. *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 521

(1991). The nonmoving party "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." *Podobnik v. United States Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (quoting *Celotex Corp.*, 477 U.S. at 325)). If the nonmoving party "fail[s] to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then the moving party is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 323.

### III.   DISCUSSION

#### A.   COUNTS I, II, & III

In Counts I, II, and III of the Amended Complaint, Plaintiff asserts various theories of attorney malpractice allegedly committed by McDonnell. Specifically in Count I, Plaintiff alleges that McDonnell committed malpractice by not perfecting the appeal when he failed to timely file the appellate brief and appendix. (Am. Compl. ¶¶ 309-53.) Similarly, in Count III, Plaintiff alleges that McDonnell was negligent for his failure to perfect the appeal by not filing a "motion in due course." (Am. Compl. ¶¶ 367-88.) Count II alleges that McDonnell committed malpractice by negligently filling out a boilerplate form for emergent relief. (Am. Compl. ¶¶ 354-66.)

In a legal malpractice case, the plaintiff must establish a *prima facie* case in order to survive a summary judgment motion. *Jerista v. Murray*, 185 N.J. 175, 191 (2005). To prove a legal malpractice claim, a plaintiff must advance sufficient evidence showing the 1) existence of an attorney-client relationship creating a duty of care on the attorney; 2) breach of the attorney's duty; 3) proximate causation; and 4) resulting damages. *Id*. at 19 (citing *McGrogan v. Till*, 167 N.J. 414, 425 (2001)).

The undisputed evidence shows that Plaintiff and McDonnell had an attorney-client relationship. Indeed, Plaintiff executed a retainer agreement hiring McDonnell to prosecute her

appeal of the Appealed Trial Court Orders. With respect to Counts II and III, however, Plaintiff has failed to advance sufficient evidence establishing that McDonnell breached his duty to her and if he did, that such breach was the proximate cause of her damages. Citing to N.J. Ct. R. 2:8-1(a), Plaintiff maintains in Count II that McDonnell's failure to have submitted a brief and appendix in support of the Application for Emergent Relief constituted malpractice. (Am. Compl. ¶ 357.) She further claims that the Application for Emergent Relief was "negligently prepared, and that the [included] factual synopsis was devoid of any passion and salient facts supporting her need for emergent relief." (Am. Compl. ¶ 358.) Importantly, Plaintiff does not rely upon any expert testimony in support of her assertions.

Plaintiff's reliance on N.J. Ct. R. 2:8-1(a) is misplaced. In fact, the comments to the very rule she relies upon belie her position. While Plaintiff correctly notes that the rule in question states that "[e]very motion shall be accompanied by a brief . . . and by an appendix[,]" she fails to realize that an Application for Emergent Relief is not a motion *per se*. *N.J. Ct. R.* 2:8-1(a). The comments to the relied upon rule state as follows:

> The appellate motion rules have never expressly addressed specific procedures for filing, serving and deciding emergent motions beyond the limited provisions of R. 2:9-8.
>
> \*    \*    \*    \*    \*    \*    \*    \*    \*    \*
>
> The innovation of the guidelines is the requirement that an applicant for emergent relief complete a fact-sheet form on the basis of which the court will determine the eligibility of the application of emergent treatment. . . If the judge determines that the matter is not eligible for emergent review, *the motion is denied without the necessity for filing any other papers*, and the denial is then endorsed on the fact sheet in order to provide a basis for seeking further review by the Supreme Court. If the application is deemed eligible for emergent relief, the emergent judge will enter such order as is appropriate under the circumstances, *ordinarily including a briefing schedule* for all parties, referring ultimate disposition to a full panel. . . .

PRESSLER & VERNIERO, N.J. Ct. R. 2:8-1, Comment 4 (emphasis added).  Additionally, *R.* 2:9-8, which governs the filing of emergent applications, makes no mention of the filing of a brief and appendix in support of an emergent application.  *See N.J. Ct. R.* 2:9-8.  As such, McDonnell followed the proper procedure as mandated by the New Jersey Court Rules.  Accordingly, as a matter of law, he did not commit malpractice by failing to submit a brief and appendix when he filed the Application for Emergent Relief.

Likewise, Defendants are entitled to summary judgment on Count III as Plaintiff has failed to advance expert testimony to support the malpractice claim asserted therein.  Count III alleges that McDonnell failed to file the appellate brief and appendix in "ordinary course."  A handwritten note by the appellate judge who denied the Application for Emergent Relief states that plaintiff "may file a motion in the ordinary course with the clerk."  (*See* Ex. 13 to Pl.'s SUF.)  Thus, while the Application for Emergent Relief was denied, the note instructs Plaintiff that she may file a motion in the ordinary course of the prosecution of the appeal.  Plaintiff avers that this was a "somewhat rare and golden opportunity" for McDonnell to have filed a motion for summary disposition as the matter was ripe for summary disposition. (Am. Compl. ¶¶ 368, 374.)  Plaintiff argues that McDonnell's failure to have done so was malpractice and that she does not need expert testimony to prove it because it is common knowledge that he should have done so.  (Pl.'s Opp Br. 26-28.)  Plaintiff's position is untenable.

A plaintiff asserting legal malpractice possesses the affirmative duty to advance expert testimony to prove breach of the defendant's duty.  *Stoeckel v. Twp. of Knowlton*, 387 N.J. Super. 1, 10 (App. Div.), *cert. denied*, 187 N.J. 489 (2006) ("Because the duties a lawyer owes to his client are not known by the average juror, a plaintiff will usually have to present expert testimony defining the duty and explaining the breach.").  In a common knowledge case, however, expert

8

testimony is not necessary to prove the breach of the applicable standard of care. *Hubbard v. Reed*, 168 N.J. 387, 394 (2001). "The doctrine applies where 'jurors' common knowledge as lay persons is sufficient to enable them, using ordinary understanding and experience, to determine a defendant's negligence without the benefit of the specialized knowledge of experts.'" *Id.* (quoting *Estate of Chin v. Saint Barnabas Med. Ctr.*, 160 N.J. 454, 469 (1999). This is not such a case here.

In short, a juror using ordinary understanding and experience would not be able to determine whether McDonnell's failure to have filed a motion for summary disposition was negligent. The average juror is unfamiliar with the intricacies of appellate practice and would not know what the proper strategic course to take would have been. Plaintiff goes to great lengths to point out that she was not familiar with the process of prosecuting her appeal because she had not taken a course in matrimonial law or appellate practice in law school. But yet she somehow maintains that what McDonnell should have done is "common knowledge" when she, a law school graduate and licensed attorney (albeit in inactive status), did not know how to proceed. Accordingly, Defendants are granted summary judgment on Count III for Plaintiff's failure to advance expert testimony.

With respect to Count I, Plaintiff alleges that McDonnell committed malpractice by his failure to have timely perfected the appeal pursuant to the initial Scheduling Order, which required the appellate brief and appendix to have been filed by November 30, 2006. (Am. Compl. ¶¶ 340-42.) The record is undisputed that McDonnell did not perfect the appeal by the November 30 deadline. The record is also undisputed that McDonnell requested that the November 30 date be extended; however, the record is ambiguous as to whether this request was formally granted. It is important to note that McDonnell's request to extend the November 30 deadline was made on November 30. As such, McDonnell breached his duty by his failure to have perfected the appeal

9

by the deadline or at least secure an extension of the deadline. Nevertheless, McDonnell's breach was not the proximate cause of Plaintiff's damages.

In general, an attorney is liable for a client's damages if the damages are proximately caused by the attorney's malpractice. *2175 Lemoine Ave. Corp. v. Finco, Inc.*, 272 N.J. Super. 478 (App. Div. 1994). In a case such as this, the proper causation test is whether the negligence was a "substantial factor" contributing to the damages. *Conklin v. Hannoch Weisman*, 145 N.J. 395, 419 (1996). The substantial factor test is satisfied where the plaintiff can show that the attorney's breach was "not a remote, trivial or inconsequential cause" of the plaintiff's damages. *Komlodi v. Picciano*, 217 N.J. 387, 423 (2014) (citation omitted). Plaintiff's "burden must be sustained by a preponderance of the competent, credible evidence and is not satisfied by mere 'conjecture, surmise or suspicion.'" *2175 Lemoine Ave. Corp.* 272 N.J. Super. at 488 (quoting *Long v. Landy*, 35 N.J. 44, 54 (1961)).

It is undisputed here that upon McDonnell's withdrawal, Plaintiff, a licensed attorney, took over the prosecution of her appeal *pro se*. It is further undisputed that the Appellate Division granted her an extension until March 30, 2007 to file the appellate brief and appendix. It is also uncontested that, despite this extension, Plaintiff failed to perfect the appeal, seek further extensions, or retain new counsel prior to the March 30 filing deadline. Further, it is undisputed that after the Appellate Division administratively dismissed her appeal without prejudice on April 25, Plaintiff took no further action to reinstate her appeal. Moreover, based upon Plaintiff's own admissions, the Appellate Division contacted her in the fall of 2009 inquiring about reopening her appeal. (Pl.'s SUF ¶ 289-92.) Nevertheless, Plaintiff took no further actions to reopen her appeal. As such, no reasonable jury could find that McDonnell's failure to prefect the appeal was the proximate cause of her damages. *See 2175 Lemoine Ave. Corp. v. Finco, Inc.*, 272 N.J. Super. 478

(App. Div. 1994) (finding that notwithstanding attorney's breach of duty, plaintiff failed to prove that its attorney's breach proximately caused its damages). Therefore, Defendants are entitled to summary judgment on Count I.

### B. COUNT IV

In Count IV, Plaintiff pleads a breach of contract claim premised upon McDonnell's alleged breach of the retainer agreement. (Am. Compl. ¶ 390-422.) She explains in her Opposition Brief that "the contract was breached as no brief was prepared and filed by [McDonnell], nor was an appendix assembled." (Pl.'s Opp. Br. 32.) She continues that McDonnell "had promised to apply for a Stay in this same agreement, envisioning that this might entail applications being made at the trial court and/or appellate court level." (*Id.*)

Under New Jersey law, legal malpractice claims are grounded in negligence. *McGrogan v. Till*, 167 N.J. 414, 425 (2001); *see Garcia v. Kozlov, Seaton, Romanini & Brooks, P.C.*, 179 N.J. 343, 357 (2004) ("Legal malpractice is a variation on the tort of negligence."). Where, as here, the plaintiff's malpractice claim is simply recast as a breach of contract claim, plaintiff may proceed with the malpractice claim but the breach of contract claim is not cognizable. The instant matter is not a case where the attorney made a specific promise to do something but failed to do it. *See Levinson v. D'Alfonso & Stein*, 320 N.J. Super. 312, 316-17 (1999) (finding plaintiffs had a cognizable breach of contract claim against attorneys when retainer agreement explicitly stated that attorneys would obtain client's consent prior to settling matter but attorneys settled without client authorization). The only provision that could be interpreted as creating a specific promise is as follows: "It is anticipated that McDonnell & Whitaker, L.L.P. may be required to make applications to both the Trial Court and the Appellate Division for a partial stay of the Order as to which the Appeal relates." (*See* Ex. 7 to Pl.'s SUF.) Under the clause's plain terms, McDonnell

& Whitaker does not explicitly promise to make an application, but agrees that it *may*. As such, any failure by McDonnell & Whitaker to have made any such application is not actionable as a breach of contract. In any event, McDonnell did in fact file a stay application with the trial court. Any negligence in so doing is actionable as attorney malpractice, which is discussed *supra*. Accordingly, Defendants are entitled to summary judgment on Count IV.

### C. COUNTS VII, VIII, IX, AND XIV

The underlying thread running through Counts VII, VIII, IX, and XIV is that Defendants breached their fiduciary duty to Plaintiff in the manner in which they prosecuted her appeal. Count VII alleges that McDonnell breached his fiduciary duty to Plaintiff by failing to inform her he had missed a filing deadline. (Am. Compl. ¶¶ 501-06.) Count VIII alleges that Defendants breached their fiduciary duty to Plaintiff by failing to inform her about the Bradley Amendment. (Am. Compl. ¶¶ 518-24.) In Count IX, Plaintiff contends that Defendants' breach of their fiduciary duty constitutes constructive fraud because Defendants failed to disclose material facts to her. (Am. Compl. ¶¶ 543-65.) Finally in Count XIV, Plaintiff alleges that Defendants' breach of fiduciary duty constituted a constructive fraud because although McDonnell & Whitaker held itself out as a partnership, it was a "sham partnership." (Am. Compl. ¶¶ 222-83.)

Under New Jersey law, "[a] fiduciary relationship arises between two persons when one person is under a duty to act for or give advice for the benefit of another on matters within the scope of their relationship." *F.G. v. MacDonnell*, 150 N.J. 550, 563 (1997). The fiduciary's duties include the duty of loyalty and a duty to exercise reasonable skill and care. *Id*. at 564. "[T]he fiduciary is liable for harm resulting from a breach of the duties imposed by the existence of such a relationship." *Id*. To survive a summary judgment motion, the plaintiff must advance sufficient evidence demonstrating that 1) a fiduciary relationship existed, and 2) "a violation of that trust"

occurred. *Wiatt v. Winston & Strawn, LLP*, No. 10-6608 (JLL) 2011 U.S. Dist. LEXIS 68827, at *26 (D.N.J. June 27, 2011). It is undisputed that Defendants and Plaintiff were in a fiduciary relationship. Thus, the issue is whether Defendants violated Plaintiff's trust.

As a threshold matter, Plaintiff has not produced any expert testimony affirming that Defendants breached their fiduciary duty. As detailed *supra*, except in common knowledge cases, expert testimony is required to establish breach of a duty. Whether an attorney breached his or her fiduciary duty is an esoteric subject matter not within the knowledge of the average juror. Furthermore, both New Jersey federal and state case law appear to conclude that attorneys violate their fiduciary duty when they breach the duty of loyalty, e.g., self-dealing, misappropriating client funds, or disclosing confidential client information for the attorney's benefit. *See*, *e.g.*, *Wiatt*, 2011 U.S. Dist. LEXIS 68827, at *28 ("Plaintiffs have adequately alleged the existence of a fiduciary relationship between the [plaintiffs] and [defendant-attorney] which extended to matters concerning management of their Starr investments. Plaintiffs have also alleged a breach of that trust."); *Packard-Bamberger & Co. v. Collier*, 167 N.J. 427, 437-38, 443 (2001) (finding that defendant-attorney usurped his corporate-client's economic opportunity for his own benefit); *Kaye v. Rosefielde*, 432 N.J. Super. 421, 481-82 (App. Div. 2013) ("The record before us is clear that Rosefielde did not heed these admonitions and misused and violated the trust reposed in him by plaintiffs in his capacity as their legal advisor and breached his fiduciary duty to act at all times in furtherance of their interests. Rosefielde committed these acts to enrich himself at plaintiffs' expense."). This is not the case here. Plaintiff has not even alleged that Defendants violated the duty of loyalty, let alone advanced evidence of it. Additionally, Plaintiff has not identified any cases analogous to the facts here wherein the court found that defendant-attorney breached his or her fiduciary duty. Accordingly, the granting of summary judgment is warranted.

Plaintiff's constructive fraud allegations are also without merit. "Constructive fraud" is not akin to fraud as it is ordinarily defined, "but is descriptive of conduct which may in the eyes of the law give rise to certain consequences ensuing upon actual fraud." *Foont-Freedenfeld Corp. v. Electro Protective Corp.*, 126 N.J. Super. 254, 256-57 (App. Div. 1973), *aff'd*, 64 N.J. 197 (1974). It usually arises in the attorney-client context when the attorney has entered into a transaction that greatly inures to the attorney's benefit and to the client's detriment. *See, e.g., In re Frost*, 171 N.J. 308 (2002) (stating that the attorney's conduct was constructive fraud when "he participated in a business transaction with his client without the appropriate safeguards and without disclosing a conflict of interest"); *In re Gallop*, 85 N.J. 317 (1981) ("It is well settled that all transactions of an attorney with his client are subject to close scrutiny and the burden of establishing fairness and equity of the transaction rests upon the attorney. If the burden is not satisfied, equity has regarded such transactions tainted so as to constitute a constructive fraud." (citations omitted)). Plaintiff has not identified any cases where a court has found constructive fraud under similar circumstances. Moreover, her reliance on precedent from other jurisdictions is not availing. Citing *Terry v. Terry*, 302 N.C. 77, 85 (1981), Plaintiff argues that a cognizable constructive fraud pleading "must [include] an allegation that defendant sought to benefit himself." (Pl.'s Opp. Br. 38.) This Court first observes that it is not bound by the opinions of the North Carolina Supreme Court. To the extent this Court considers *Terry* as persuasive authority, it actually militates *against* Plaintiff's constructive fraud claim. As noted *supra*, Plaintiff makes no allegation, let alone advances any facts, that Defendants sought to benefit themselves. Accordingly, Defendants are entitled to summary judgment.

D. **COUNTS V AND VI**

14

In Counts V and VI, Plaintiff asserts claims sounding in common law fraud. "Every fraud in its most general and fundamental conception consists of the obtaining of an undue advantage by means of some act or omission that is unconscientious or a violation of good faith." *Jewish Ctr. of Sussex Cnty. v. Whale*, 86 N.J. 619, 624 (1981). To prevail on a common law fraud claim under New Jersey law, the plaintiff must prove that the defendant 1) made a material misrepresentation or omission of a material fact 2) with knowledge of its falsity 3) intending that plaintiff rely upon it, and that 4) the plaintiff detrimentally relied upon it 5) causing the plaintiff damages. *Id*.

Specifically in Count V, Plaintiff alleges that McDonnell committed fraud because he intentionally failed to inform her that the Application for Emergent Relief was deficient, that he failed to accelerate her appeal or file a motion in due course as the Appellate Division stated on the emergent relief form, and that he failed to obtain an extension of the November 30 filing deadline or advise her that he had not obtained an extension. (Am. Compl. ¶¶ 426-31.)

Plaintiff's contention that these actions, or inactions, are fraudulent is untenable. With respect to the allegedly defective Application for Emergent Relief, as detailed *supra*, Plaintiff is simply incorrect. As for his failure to accelerate the appeal or file the appellate motion in due course, McDonnell relied upon his experience as an appellate advocate to guide his strategy for prosecuting the appeal. McDonnell filed the notice of appeal on July 10. (Pl.'s SUF ¶ 142.) Throughout July and August, McDonnell and Plaintiff's ex-husband's attorney communicated in earnest in an attempt to settle to the matter. (*See* Ex. 35 to Pl.'s SUF.) Indeed, had these settlement attempts proved successful, it would have obviated the need for the appeal and would have also saved Plaintiff a significant amount of money—relief Plaintiff repeatedly argues she desperately needed. Via a notice dated August 4, 2006, the Appellate Division scheduled a Pre-Argument

15

Conference to occur on August 23. (*See* Ex. 74 to Pl.'s SUF.) This notice effectively suspended the time for the filing of the appellate brief and appendix pending the conference. (*See* Ex. 1 to Pl.'s SUF.) At the request of Plaintiff's ex-husband's counsel, the Pre-Argument Conference was adjourned until September. (*See* Ex. 75 to Pl.'s SUF.) Throughout this time, the parties continued to discuss settlement of the underlying matter. (*See* Ex. 70 to Pl.'s SUF.) The Pre-Argument Conference occurred on September 19, but it was unsuccessful in producing a settlement. (*See* Exs. 73, 76 to Pl.'s SUF.) Nevertheless, the parties continued settlement discussions in October. (*See* Exs. 38, 39 to Pl.'s SUF.) McDonnell apparently recommended that Plaintiff accept the proposed settlement terms but Plaintiff declined to do so. (*See* Ex. 38 to Pl.'s SUF.) McDonnell and Plaintiff's relationship was apparently deteriorating at this point due to Plaintiff's insistence that McDonnell focus on issues that were not the subject of the appeal. (*See* Ex. 39 to Pl.'s SUF.) Still, McDonnell continued representing Plaintiff and on October 31, he filed the Application for Emergent Relief. (*See* Ex. 66 to Pl.'s SUF.) The application was summarily denied the same day and immediately thereafter on November 2, McDonnell moved for a stay of the Appealed Trial Court Orders. (*See* Ex. J to Def.'s RSUF.) This filing included a forty-page brief detailing the merits of why the stay was warranted. (*Id.*) The motion for stay was denied on December 1. (*See* Ex. 46 to Pl.'s SUF.) Accordingly, the undisputed facts demonstrate that, until this point, McDonnell had diligently prosecuted Plaintiff's appeal. Her suggestion that he committed fraud by not accelerating her appeal is not only belied by the record, but also by the fact that had the matter settled or had the emergent relief application been granted, she may have obtained the relief she sought without having to expend large sums of money for McDonnell to draft an appellate brief and create an appendix. When the undisputed facts are viewed in totality and chronologically, it is apparent that McDonnell pursued a reasonable strategy. After all, "attorneys who pursue

16

reasonable strategies in handling their cases and who render reasonable advice to their clients cannot be held liable for the failure of their strategies or for any unprofitable outcomes that result because their clients took their advice." *Ziegelheim v. Apollo*, 128 N.J. 250, 267 (1992). New Jersey "law demands that attorneys handle their cases with knowledge, skill, and diligence, but it does not demand that they be perfect or infallible, and it does not demand that they always secure optimum outcomes for their clients." *Id*. Therefore, Defendants are entitled to summary judgment on Count V.

In Count VI, Plaintiff claims that McDonnell fraudulently induced her into signing the Substitution of Attorney. (Am. Comp. ¶¶ 449-97.) In short, the record is devoid of evidence that McDonnell made any statements or omissions that she relied upon in signing the Substitution of Attorney. The undisputed record evidence shows that McDonnell forwarded Plaintiff a Substitution of Attorney and requested that she execute and return it for filing with the Appellate Division. (Ex. 85 to Pl.'s SUF.) There is no record evidence that Plaintiff relied upon any statement or omission made by McDonnell when she signed the Substitution of Attorney. Plaintiff's own allegations state that McDonnell did not place in writing or otherwise explain to her why he wished to withdraw and wanted her to execute the Substitution of Attorney. (Pl.'s SUF ¶ 200-01.) Plaintiff's reliance on Rule of Professional Conduct 7.1(a) as creating a "duty to speak" is misplaced. (Pl.'s Opp. Br. 41.) In general, this rule prescribes guidelines for the services attorneys render, i.e., attorney advertising and solicitation of clients. *See In re Comm. on Attorney Adver.*, 213 N.J. 171, 179 (2013); *Nostrame v. Santiago*, 213 N.J. 109, 125 (2013). As such, Defendants' summary judgment motion with respect to Count VI is granted.

It should be noted that this Court does not endorse the manner in which McDonnell withdrew from his representation of Plaintiff. As detailed *supra*, McDonnell breached his duty to

Plaintiff when he withdrew without having secured an extension of the filing deadline; however, this breach did not proximately cause Plaintiff's damages.

### E. COUNTS X AND XIII

In Count XIII, Plaintiff alleges that Piccoli, a legal assistant employed at McDonnell & Whitaker when the firm represented Plaintiff, was negligent in her representation of Plaintiff. Specifically, Plaintiff alleges that Piccoli negligently filled out the Application for Emergent Relief form, negligently failed to draft the appellate brief or compile the appendix, negligently failed to inform McDonnell of November 30 filing deadline, failed to keep accurate time records, and deliberately and knowingly participated in McDonnell's withdrawal by mailing the Substitution of Attorney. (Am. Compl. ¶¶ 193-218.)

As explained *supra*, a plaintiff must prove duty, breach of that duty, proximate causation, and resulting damages in order to have a *prima facie* negligence cause of action. *McGrogan*, 167 U.S. at 425. It is well-settled under New Jersey law that duty is a matter of law determined by the court. *See Wang v. Allstate Ins. Co.*, 125 N.J. 2 (1991). Simply stated, Piccoli did not have a duty to perform the acts of which Plaintiff complains. The duty to perform the complained of legal work fell upon McDonnell. To the extent such legal work was negligently performed, McDonnell would be subject to liability for any such negligence. *See* N.J. R. Prof. Conduct 5.3. In any event, the undisputed evidence of record demonstrates that McDonnell, save for the transcription of audio recordings, performed the allegedly negligent legal work. (*See* Ex. 24 to Pl.'s SUF.) Plaintiff's assertions that Piccoli performed the legal work are unsupported by competent evidence. And even if Piccoli had performed the complained of legal work, any negligence in the performance of same would subject McDonnell to liability. Therefore, Defendants are entitled to summary judgment on Count XIII.

18

With respect to Count X, Plaintiff alleges that Whitaker, McDonnell's law partner, is vicariously liable for the alleged negligence and fraudulence of McDonnell and/or Piccoli. (Am. Compl. ¶¶ 17-101.) As a threshold matter, with respect to vicarious liability, "every partnership member is jointly and severally liable for torts committed by other members of the partnership acting within the scope of the firm business." *Staron v. Weinstein*, 305 N.J. Super. 236, 241-42 (App. Div. 1997). Additionally, it is well-settled that a principal is subject to liability for the torts committed by his or her agent when the tort is committed within the scope of the agency. *See Davis v. Devereux Found.*, 209 N.J. 269, 287-88 (2012); *Printing Mart-Morristown v. Sharp Elecs. Corp.*, 116 N.J. 739, 771 (1989). Count X nevertheless fails because, to be vicariously liable, the agent must have committed the underlying tort. Since this Court has already determined that McDonnell and Piccoli are not liable for the complained of torts, as a matter of law, Whitaker cannot be vicariously liable. Consequently, Defendants are entitled to summary judgment on Count X.

One final issue warrants comment. Plaintiff maintains that she is entitled to punitive damages. (Pl.'s Opp. Br. 43.) It is well-settled under New Jersey law that punitive damages can only be awarded if the plaintiff is awarded compensatory damages; nominal damages are insufficient to support an award of punitive damages. *N.J.S.A.* § 2A:15-5.13(c); *see Scopia Mortg. Corp. v. Greentree Mortg. Co., L.P.*, 233 F. Supp. 2d 625, 629 n.2 (D.N.J.), *aff'd*, 56 Fed. App'x 93 (3d Cir. 2003) (stating that New Jersey law requires "an award of compensatory damages prior to the imposition of punitive damages"). Since this Court is granting Defendants' summary judgment on all counts, Plaintiff cannot be awarded compensatory damages and in turn, cannot be awarded punitive damages as a matter of law.

Based on the foregoing, Plaintiff's Motion for Partial Summary Judgment and Motion to Strike are moot.

## IV. CONCLUSION

In conclusion, the undisputed evidence of record shows that Defendants are entitled to summary judgment on all counts. Therefore, Defendants' Summary Judgment Motion is **GRANTED**. Further, Plaintiff's Motion for Partial Summary Judgment and Motion to Strike are **DENIED**.

s/ Susan D. Wigenton, U.S.D.J.

Orig: Clerk
Cc   Madeline Cox Arleo, U.S.M.J.
     Parties